IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Mayra Perez, individually and on behalf of all others similarly situated, ) )<br>Plaintiff, )<br>vs. )<br>Faurecia Interior Systems, Inc., )<br>Defendant. ) | Civil Action No. 6:08-4046-HMH-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion to dismiss. In her complaint, the plaintiff alleges in her first claim for relief that the defendant, her former employer, terminated her employment based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). The plaintiff alleges in her second claim for relief that the defendant discriminatorily retaliated against her and the proposed class members by offering them a "facially invalid" "Severance Agreement and Complete Release of All Claims" ("Release"), which the plaintiff signed and which prohibited her and the proposed class members from filing charges of discrimination with, or participating in investigations of, the Equal Employment Opportunity Commission ("EEOC"), in violation of the ADEA and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). She seeks injunctive relief, compensatory damages, and punitive damages.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff alleges that the defendant violated the ADEA by terminating her employment as the Non-Conforming Parts Supervisor and immediately replacing her with a younger worker (comp. ¶¶ 10-11, 13). The plaintiff also claims she was retaliated against when she signed the Release that she alleges prevented her from filing a charge of discrimination with the EEOC (*id.* at ¶ 16). The Release was part of a Severance Agreement that paid her two months severance pay and two months of health insurance continuation (comp., ex. A, ¶¶ 1-2). The plaintiff alleges that the Release was presented to her in a take it or leave it proposition at a time when she was unable to fully evaluate and understand the facts, at a time when she was unaware of all the facts indicating the falsity of defendant's claim that her job was being eliminated, at a time when she was unaware of the facts indicating that she was being replaced by a younger employee, and at a time when she was not aware of her potential remedy under federal law for the unlawful discrimination against her (comp. ¶ 18). The plaintiff was terminated from employment on April 27, 2007, and she signed the Severance Agreement on May 14, 2007. The plaintiff alleges that it was after her termination when she learned she had been replaced in her job by a younger woman (comp. ¶ 13).

In the Release, the plaintiff promised not to file a lawsuit against the defendant and released the defendant from any liability regarding the causes of action in her complaint (*id.* at ¶¶ 4, 6). The Release section of the Severance Agreement provides:

> In consideration of the foregoing, you do hereby release and forever discharge FAURECIA INTERIOR SYSTEMS ("FAURECIA") its predecessors, successors, partners, joint ventures, affiliates, related corporations or companies, assigns, officers, employees, agents, and servants, (herein collectively "Faurecia") from all manner of actions, causes of action, suits, debts, accounts, judgments, claims and demands whatsoever, legal, equitable, or administrative, including all claims for attorneys' fees, and any claim you have made or might have made under any state or federal law or regulation related to or

> arising either directly [or] indirectly from your relationship with Faurecia as a shareholder, customer, potential employee, employee or member of the public as of the date of this release, specifically encompassing any claims under the Employee Retirement Income Security Act.

(Comp., ex. A at ¶ 4).

> The Release later provides:
>
> [You] represent that you have not filed any complaints, claims or actions and that you will not do so at any time hereafter as to matters arising prior to the date of this release against Faurecia with any state, federal or local agency, or court; and that if any agency or court assumes jurisdiction of any complaint, claim, or action against Faurecia filed by any person, you will direct that agency or court to withdraw from or dismiss the matter with prejudice with respect to all my interests.

(Comp., ex. A at ¶ 6). The plaintiff alleges that this Paragraph 6 of the Release is "facially retaliatory, discriminatory, and invalid" (comp. at ¶ 16).

On June 28, 2007, the plaintiff filed a charge of discrimination with the EEOC (comp. at ¶ 6), alleging both: (1) discriminatory treatment in the termination of her employment, under the ADEA; and (2) retaliation because the provision of the Release prohibiting her from filing a charge of discrimination with the EEOC violated the Older Workers' Benefit Protection Act ("OWBPA") amendments to the ADEA.[1] The EEOC eventually issued to the plaintiff a Notice of Right to Sue, and the plaintiff initiated this lawsuit.

## ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove

---

[1] The plaintiff did not allege in the EEOC charge that Title VII had been violated; however, for purposes of this motion, the defendant has treated Title VII as if it were appropriately included (def. m. to dismiss at 2 n.1).

3

no set of facts which would support its claim and would entitle it to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.  *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted).

The defendant's motion to dismiss raises two issues: (1) is the defendant's offer of a Release to the plaintiff containing a prohibition on filing an EEOC charge, and the plaintiff's agreement to its terms, "facially… retaliatory" under the ADEA and Title VII; and (2) whether or not the Release is retaliatory, does the fact that the plaintiff signed the Release bar her from proceeding with her substantive ADEA discriminatory termination claim.

*Facial Retaliation*

The ADEA's anti-retaliation provision provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment… because such individual… has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Title VII contains a similar provision.  42 U.S.C. § 2000e-3(a).  To succeed on a retaliation claim, an employee must be subjected to a material adverse action, i.e., an injury or harm. *Burlington Northern & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006) ("the anti-retaliation provision protects an individual not from all retaliation, but from retaliation that causes an injury or harm").  To plead a cause of action under either the ADEA or Title VII, the plaintiff must show that:  (1) she engaged in protected activity; (2) the defendant took a materially adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action.  *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998), *applying Burlington*, 548 U.S. at 67.

The defendant concedes that waivers of right to file an EEOC charge or participate in an investigation of allegations are unenforceable. *See* 29 U.S.C. § 626(f)(4) (the OWBPA, which amended the ADEA); *EEOC v. Nucletron Corp.*, 563 F. Supp.2d 592, 597 n.3 ("The OWBPA only applies to waivers involving EEOC charges alleging a violation of the ADEA. The reasoning of *Cosmair* [821 F.2d 1085, 1089-90 (5th Cir. 1987)], however, applies equally to EEOC charges under Title VII and the EPA. Accordingly, such waivers under any of the three statutes are likely void as against public policy."). However, the defendant argues that the plaintiff's retaliation claim fails because she cannot identify any protected activity in which she engaged before the defendant's offer of the Release and because the defendant took no materially adverse action against her. This court agrees.

Only two courts have addressed the precise issue presented in the plaintiff's second claim for relief. In *EEOC v. SunDance Rehabilitation Corp.*, 466 F.3d 490 (6th Cir. 2006), the employer offered a severance agreement to employees that included a provision that would prevent the filing of an EEOC charge. The severance agreement also gave the employer the right to recover the severance payment and attorneys' fees, if the employee filed a charge or otherwise breached the agreement. The putative plaintiff in *SunDance* received the severance agreement, asked the employer to eliminate the prohibition on filing an EEOC charge and filing a lawsuit, and when the employer refused to do so, the plaintiff did not sign the severance agreement, and the employer did not pay the severance payment. The EEOC brought suit on behalf of the employees, alleging that the prohibition on filing a charge was facially retaliatory. The Sixth Circuit Court of Appeals held:

> [W]e are not persuaded by the EEOC's argument that SunDance's mere offer of the Separation Agreement to all employees terminated in the reduction in force, without more, amounts to facial retaliation under the four statutes at issue here… And, as we have noted, the charge filing ban may be unenforceable, but its inclusion in the Separation Agreement does not make SunDance's offering that Agreement in and of itself retaliatory.

5

*SunDance*, 466 F.3d at 501.

In 2008, the District Court in Maryland was confronted with a similar set of facts. In *EEOC v. Nucletron Corp.*, 563 F. Supp.2d 592 (D. Md. 2008), the employer offered a severance agreement to the putative plaintiff and a class of other former employees. The EEOC alleged that the severance agreement was a *per se* violation of the anti-retaliation provisions of the ADEA, Title VII, and the Equal Pay Act because it included a release of the right to file a charge of discrimination with the EEOC and waived the right to participate in EEOC proceedings. The severance agreement presented in *Nucletron* also contained a liquidated damages provision whereby Nucletron could have ceased payment and sought damages if the employees who signed the agreement filed charges with the EEOC. The EEOC also alleged that Nucletron retaliated against the putative plaintiff by denying him severance.

Under this set of facts, the court stated, "[T]he EEOC may succeed under its … theory [that withholding benefits already promised or owed from the plaintiff because he refused to sign the release and severance agreement,] but not the first [theory that the release was facially retaliatory]." *Nucletron*, 563 F. Supp.2d at 595. The EEOC's only avenue to prevail was "[i]f Nucletron revoked benefits that were part of the severance package promised to all terminated employees because [the plaintiff] refused to waive his rights… If, however, Nucletron offered [the putative plaintiff] an additional payment not otherwise promised or owed, the EEOC's claim would fail." *Id.*

The court, relying on the decision of the Sixth Circuit in *SunDance*, held as follows:

> The mere offer of the severance agreement is insufficient to constitute discrimination in the retaliation context. The term "discrimination" in the anti-retaliation provision of Title VII includes any action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v.*

6

> *White*, 548 U.S. 53, 68 (2006). The mere offer of a severance agreement does not fit this definition. As discussed below, the employer's action only reaches the level of retaliation if it denies severance benefits that are otherwise promised or owed or if the employer sues to enforce the agreement. The mere offer of the agreement, without more, is not adverse and therefore not "discrimination" under the statute.

*Nucletron*, 563 F.Supp.2d at 598-99 (parallel citations omitted).

The plaintiff argues that the court should adopt the EEOC's position in EEOC Notice Number 915.002, issued on April 10, 1997. In that Notice, the EEOC takes the position that "[a]greements that attempt to bar individuals from filing a charge or assisting in a Commission investigation run afoul of the antiretaliation provisions…" (pl. resp. m. to dismiss, ex. A at 3). The plaintiff argues that the defendant "points only to" the *SunDance* and *Nucletron* cases (pl. resp. m. to dismiss 8). As noted above, there is good reason that the defendant relied only on these cases as they are the only cases to address the precise issue presented here. The EEOC Notice itself fails to cite any case where a court found the mere presentation of a release containing a charge-filing prohibition to be facially retaliatory. As the Sixth Circuit Court of Appeals noted in *SunDance*, the EEOC acknowledges that its Enforcement Guidance is not law and "is entitled to respect only to the extent of its persuasive power." *SunDance*, 466 F.3d at 500. "The Enforcement Guidance does not receive *Chevron* type deference pursuant to *Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 843 (1984)." *Id.* The court in *SunDance* court found the Notice unpersuasive, holding that it disagreed with the EEOC's argument that the "mere offer of the Separation Agreement to all employees…, without more, amounts to facial retaliation under the four statutes [EPA, ADEA, ADA, and Title VII] at issue here." *Id.* at 500-01.

In the instant case, the plaintiff signed a Release containing an invalid prohibition on filing an EEOC charge or participating in an EEOC investigation. The plaintiff

later filed an EEOC charge and received a Notice of Right to Sue. There is no allegation in the plaintiff's complaint that the defendant sought to enforce that portion of the Release. Further, the complaint states that the plaintiff received the severance payments promised in the agreement (comp. ¶ 12). As in the *Nucletron* case, the defendant's mere offer of the Release "is insufficient to constitute discrimination in the retaliation context." *Id.* at 598.

Based upon the foregoing, the plaintiff cannot succeed on the "facially retaliatory" theory presented in her second cause of action. Accordingly, the claim should be dismissed.

### *Substantive ADEA Claim*

The defendant next argues that the plaintiff is prevented from bringing her substantive ADEA claim under the terms of the Release. The defendant contends that its "inclusion of an invalid prohibition on filing a charge of discrimination with the EEOC does not invalidate the portion of the Release where Perez released Faurecia from liability under 'any state or federal law or regulation related to or arising either directly or indirectly from your relationship with Faurecia as' an employee" (def. m. to dismiss 11). In *EEOC v. Cosmair*, 821 F.2d 1085, 1081 (5th Cir. 1987), the Fifth Circuit Court of Appeals held that "while an employee could not waive her right to file a charge with the EEOC, she could waive the right to recover in her own lawsuit, and that the waiver of a right to file a cause of action was not invalid because it was conjoined with a void waiver of the right to file a charge." *SunDance*, 466 F.3d. at 498-99 (citing *Cosmair*, 821 F.2d at 1091).

The OWBPA provides that "an individual may not waive any right or claim . . . unless the waiver is knowing and voluntary." 29 U.S.C. § 626 (f)(1). The statute goes on to say that a "waiver may not be considered knowing and voluntary unless at a minimum"

8

certain requirements are included in the waiver.[2] *Id.* § 626(f)(1)(A)-(H). The party asserting

---

[2]The minimum requirements for a knowing and voluntary waiver under the statute are as follows:

    (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

    (B) the waiver specifically refers to rights or claims arising under this chapter;

    (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

    (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

    (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

    (F)(i) the individual is given a period of at least 21 days within which to consider the agreement; or

    (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

    (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

    (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to--

    (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and

    (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1).

the validity of a waiver "shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary." *Id.* § 626(f)(3).

Here, on a motion to dismiss pursuant to Rule 12(b)(6), this court must accept as true the plaintiff's allegations. In her complaint, the plaintiff alleges that the Release was presented to her in a take it or leave it proposition at a time when she was unable to fully evaluate and understand the facts, at a time when she was unaware of all the facts indicating the falsity of defendant's claim that her job was being eliminated, at a time when she was unaware of the facts indicating that she was being replaced by a younger employee, and at a time when she was not aware of her potential remedy under federal law for the unlawful discrimination against her (comp. ¶ 18). The plaintiff argues that the "proper inference from the facts, as before the Court at this stage of the case, is that Defendant intentionally concealed from Ms. Perez the facts indicating unlawful discrimination against her" (pl. resp. m. to dismiss 9).

The defendant argues that the Release complies with all of the OWBPA's requirements, and thus the plaintiff's waiver was knowing and voluntary as a matter of law. While the defendant is correct that the statute does not inquire into whether the employer reveals to the employee alleged facts that the employee could use to support a discrimination claim, this court cannot say at this stage of the litigation that the plaintiff will not be able to raise any issue of material fact as to the voluntariness of the Release. *See Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F.Supp.2d 488, 492 (D. Md. 2002) ("The Court accepts that, despite a waiver's compliance with the OWBPA's guidelines, it will not be deemed knowingly and voluntarily executed if the employee was under duress or otherwise intimidated into signing by the employer.") (citing *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1229 (10th Cir.1999) and S.Rep. No. 263, at 31-32 (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1537 (noting that when Congress passed the OWBPA, it intended courts to scrutinize the "complete circumstances" under which ADEA waivers are signed

to look for instances in which fraud, duress, or mistake impacted the employee's waiver of rights)). Accordingly, the motion to dismiss the plaintiff's first cause of action should be denied.

*Damages*

Lastly, the defendant argues that independent grounds exist to support dismissing the plaintiff's claims for injunctive relief and compensatory damages.[3] Based upon the pleadings now before this court, this court cannot say that the plaintiff can prove no set of facts that would entitle her to the relief she seeks. Accordingly, the motion to dismiss the requests for injunctive relief and compensatory damages should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendant's motion to dismiss (doc. 6) be granted in part and denied in part as set forth above. The defendant's request for attorney fees and costs associated with its motion should be denied.

s/William M. Catoe
United States Magistrate Judge

June 18, 2009

Greenville, South Carolina

---

[3] The defendant also argues that independent grounds exist for dismissing the claim for punitive damages. As this court has recommended that the second cause of action be dismissed - the only Title VII claim and thus the only claim for which punitive damages would be available - the court will not address the independent grounds for dismissal of the claim for punitive damages.