IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Mayra Perez, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 6:08-4046-HMH-WMC |
| vs. | ) ) | **OPINION & ORDER** |
| Faurecia Interior Systems, Inc., | ) ) ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge William M. Catoe, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Mayra Perez ("Perez") alleges violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), and Title VII of the Civil Rights Act of 1964, § 704(a), 42 U.S.C. § 2000e-3(a), ("Title VII"). Defendant Faurecia Interior Systems, Inc. ("Faurecia") filed a motion to dismiss all claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In his Report and Recommendation, Magistrate Judge Catoe recommends granting in part and denying in part Faurecia's motion to dismiss. Both Perez and Faurecia filed objections to the Report and Recommendation. After review and for the reasons stated below, the court adopts the Report

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

and Recommendation to the extent it is consistent with this order and grants in part and denies in part Faurecia's motion to dismiss.

## I. Factual and Procedural History

Perez was employed by Faurecia in Fountain Inn, South Carolina from December 1994 through April 27, 2007 as a non-conforming parts supervisor. (Compl. ¶¶ 8, 10.) On April 27, 2007, a Faurecia employee informed Perez that "her job was being eliminated effective that day, that she could withdraw unemployment compensation, and that she would receive two months severance pay if she signed" a Severance Agreement and Complete Release of All Claims ("Severance Agreement"). (Id. ¶ 11.) Perez signed the Severance Agreement on May 14, 2007, and received two months' pay. (Id. Ex. A (Severance Agreement 5).)

After her termination from Faurecia, Perez alleges that she "learned that the statement that her job was being eliminated was false and that she had, in fact, been replaced by . . . a much younger woman." (Id. ¶ 13.) Accordingly, Perez contemplated filing suit against Faurecia. However, the Severance Agreement "that [Faurecia] required [Perez] to sign as a condition for receiving the limited severance pay offered, on its face prohibits [Perez] from filing a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")]." (Compl. ¶ 16.) Nevertheless, Perez filed a charge with the EEOC and received a right-to-sue letter. (Id. ¶ 6.) Perez filed the instant suit against Faurecia on December 17, 2008, alleging (1) that Faurecia terminated her because of her age in violation of the ADEA and (2) by "conditioning the receipt of a benefit on [Perez's] commitment not to file an EEOC charge, [Faurecia] retaliated and discriminated against [Perez] in violation of Title VII . . . , the [ADEA,] and other similar laws." (Id. ¶ 17.)

Faurecia filed a motion to dismiss on February 16, 2009, seeking dismissal of all claims. Faurecia argues that Perez is "prevented from bringing her ADEA claim based upon the termination of her employment, [because] she agreed to the terms of the Release waiving any right to file a lawsuit." (Def. Mem. Supp. Mot. Dismiss 2.) Additionally, Faurecia asserts that the Severance Agreement is not facially retaliatory under the ADEA and Title VII. (Id.) Perez filed a response in opposition to the motion on March 6, 2009. On June 18, 2009, Magistrate Judge Catoe recommended that this court grant Faurecia's motion to dismiss Perez's retaliation claim and deny Faurecia's motion to dismiss Perez's ADEA claim. Perez and Faurecia filed objections to the Report and Recommendation on July 6, 2009.

## II. Discussion of the Law

### A. Federal Rule of Civil Procedure 12(b)(6)

In federal court, a claimant must make only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal of a complaint for failure to state a claim is proper "only if it can be said that on the claim as pleaded the claimant can prove no set of facts that would entitle [her] to relief." Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995). Furthermore, the court must treat the factual allegations of the nonmoving party as true. See Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994).

### B. ADEA Claim

The magistrate judge concluded that Faurecia's motion to dismiss the ADEA claim should be denied because the "court cannot say at this stage of the litigation that [Perez] will not

be able to raise any issue of material fact as to the voluntariness of the Release."[2] (Report & Recommendation 10.) Faurecia objects to the magistrate judge's recommendation to deny its motion to dismiss the ADEA claim. Specifically, Faurecia argues that the magistrate judge "mistakenly concluded that [Perez] could raise 'issues of material fact as to the voluntariness of the Release.'" (Faurecia Objection 1.)

Faurecia asserts that Perez is prevented from bringing her ADEA claim based on the terms of the Severance Agreement. The Severance Agreement states in pertinent part:

> In consideration of the foregoing, you do hereby *release and forever discharge* [Faurecia] its predecessors, successors, partners, joint ventures, affiliates, related corporations or companies, assigns, officers, employees, agents, and servants, (herein collectively "Faurecia") *from all manner of actions, causes of action, suits*, debts, accounts, judgments, claims and demands *whatsoever, legal, equitable, or administrative*, including all claims for attorneys' fees, and any claim you have made or might have made under any state or federal law or regulation related to or arising either directly [or] indirectly from your relationship with Faurecia as a shareholder, customer, potential employee, employee or member of the public as of the date of this release, specifically encompassing any claims under the Employee Retirement Income Security Act**.**
> . . . .
>
> [You] represent that *you have not filed any complaints, claims or actions and that you will not do so at any time hereafter* as to matters arising prior to the date of this release against Faurecia with any state, federal or local agency, or court; and that if any agency or court assumes jurisdiction of any complaint, claim, or action against Faurecia filed by any person, you will direct that agency or court to withdraw from or dismiss the matter with prejudice with respect to all my interests.

---

[2] The magistrate judge found that there may be an issue of material fact regarding the "voluntariness of the Release" because Perez states in her complaint that the Severance Agreement was presented to her in a "take it or leave it manner," "she was unable to fully evaluate and understand the facts," and she was "unaware of all the facts indicating the falsity of [Faurecia's] claim that her job was being eliminated." (Report & Recommendation 10.)

(Compl. Ex. A (Severance Agreement at ¶¶ 4, 6).) (emphasis added). Faurecia concedes that the Severance Agreement's waiver of the right to file an EEOC charge or participate in an investigation is unenforceable. See 29 U.S.C. § 626(f)(4) ("No waiver may be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the [EEOC]."). However, Faurecia alleges that its "inclusion of an invalid prohibition on filing a charge of discrimination with the EEOC does not invalidate the portion of the Severance Agreement where Perez released Faurecia from liability under any 'state or federal law or regulation.'" (Def. Mem. Supp. Mot. Dismiss 11.); (Compl. Ex. A (Severance Agreement 1-2).)

The Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626, imposes specific requirements for waiving an ADEA claim. "An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1).

> [A] waiver may not be considered knowing and voluntary unless at a minimum–
>
> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under this chapter;
>
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
>
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
>
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired.

§ 626(f)(1)(A)-(G). An agreement purporting to waive an individual's rights arising under the ADEA that fails to conform to the statutory requirements does not waive an employee's right to seek relief under the ADEA. Oubre v. Entergy Operations, Inc., 522 U.S. 422, 426-28 (1998). In Oubre, the United States Supreme Court explained, "[t]he statutory command is clear: An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements." 522 U.S. at 426-27.

The Severance Agreement entered into between Faurecia and Perez fails to meet § 626(f)(1)(B)'s requirement that a "waiver *specifically* refers to rights or claims arising under this chapter." (Emphasis added.) The Severance Agreement does not specifically refer to the rights or claims under the ADEA. At best, the Severance Agreement alludes to the ADEA in stating that Perez releases Faurecia from any claim that she may have "under any . . . federal law or regulation related to or arising either directly [or] indirectly from [her] relationship with Faurecia. . . ." (Compl. Ex. A (Severance Agreement ¶ 4).) However, in Oubre, the Supreme Court noted that one of the shortcomings of the release involved in that case was that the "release

made no *specific* reference to claims under the ADEA."[3] 522 U.S. at 425 (emphasis added). In addition, the Court explained that

> [t]he policy of the OWBPA is likewise clear from its title: It is designed to protect the rights and benefits of older workers. The OWBPA implements Congress' policy via a *strict, unqualified statutory stricture on waivers*, and we are bound to take Congress at its word. Congress imposed specific duties on employers who seek releases of certain claims created by statute. Congress delineated these duties with precision and *without qualification*: An employee 'may not waive' an ADEA claim unless the employer complies with the statute. Courts cannot with ease presume ratification of that which Congress forbids.
> . . . .
> The OWBPA governs the effect under federal law of waivers or releases on ADEA claims and incorporates *no exceptions or qualifications*.

Id. at 427 (emphasis added). Given the statutory language as well as the Supreme Court's rationale and holding in Oubre, the court finds that the Severance Agreement, in failing to meet every requirement under § 626(f)(1), did not waive the ADEA claim.

The court also notes that the fact that Perez may have retained her severance pay does not "amount to a ratification equivalent to a valid release of her ADEA claims." Oubre, 522 U.S. at 428. In its objections, Faurecia states, "[i]mportantly, Perez has retained the severance paid to her by Faurecia." (Faurecia Objections 4.) In Adams v. Moore Business Forms, Inc., 224 F.3d 324, 327-28 (4th Cir. 2000), the United States Court of Appeals for the Fourth Circuit held that its prior caselaw allowing retention of severance pay to relinquish the right to bring an ADEA claim has been overruled in part by Oubre. According to the Adams court,

---

[3] The release agreement at issue in Oubre was non-compliant with the statute in three respects: (1) it did not give the employee enough time to consider her options, (2) it did not give the employee seven days to change her mind after signing the release, and (3) the release made no reference to the ADEA. See 522 U.S. at 424-25. The Supreme Court, however, never states that had there been fewer acts of non-compliance with § 626(f)(1), their holding that the release could not bar the employee from filing ADEA claims would have been different.

7

> [i]n Oubre, the Court rejected the suggestion that an "employee's mere retention of moneys [could] amount to a ratification" of a release that would otherwise be invalid because of its failure to comply with the OWBPA's requirements. Oubre thus overruled Blistein v. St. John's College, 74 F.3d 1459 (4th Cir. 1996), insofar as Blistein held that an employee could relinquish the right to bring an ADEA claim by accepting benefits offered in exchange for a release that failed to comply with the OWBPA's waiver requirements.

Adams, 224 F.3d at 327 (internal citation omitted).[4] Accordingly, because the Severance Agreement does not comply with the OWBPA, it does not bar Perez's substantive ADEA claim and Faurecia's motion to dismiss this claim is denied.[5]

### C. Facial Retaliation Claim

The magistrate judge recommends dismissing Perez's facial retaliation claim. (Report & Recommendation 8.) Perez "alleges that [Faurecia] discriminated against her and a class of similarly-situated individuals who were laid off in 2007 by requiring them to sign unlawful waivers of their rights to file charges of discrimination in return for meager amounts of severance pay" in violation of anti-retaliation provisions of the ADEA and Title VII. (Perez Objections 1.); (Compl. ¶ 33.) The magistrate judge concluded that Faurecia's "mere offer of the Release is insufficient to constitute discrimination in the retaliation context." (Report & Recommendation 8.)

---

[4] The court notes that this Order does not address the issue of whether there should be an offset of the severance amount received by Perez should she prevail on an ADEA claim as that issue is not before the court. Adams, 224 F.3d at 327.

[5] In her objections, Perez argues that "the Magistrate Judge appears to assume that [I] was not otherwise entitled to severance benefits. [I] dispute[ ] this claim." (Perez Objections 4.) If Perez was entitled to severance benefits outside of the Severance Agreement, the Severance Agreement would not be in compliance with § 626(f)(1)(D). However, aside from a blanket statement, Perez has provided no evidence to suggest that she was entitled to severance pay. Moreover, Perez's dispute, does not alter the analysis above.

Both the ADEA and Title VII contain anti-retaliation provisions. Pursuant to the ADEA, it is unlawful "for an employer to discriminate against any of his employees . . . because such individual . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). Similarly, Title VII provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Perez argues that the Severance Agreement violates these anti-retaliation provisions because the Severance Agreement "require[s] [her] to release [Faurecia] . . . from all manner of claims including administrative claims, to represent that she had not filed any actions . . . and to promise that if any such claim was filed 'by any person, [she] will direct that agency or court to withdraw from or dismiss the matter with prejudice.'" (Perez Objections 3.) By its terms, the Severance Agreement does not retaliate against Perez. To demonstrate retaliation, Perez must show "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action at the hands of [Faurecia]; and (3) [Faurecia] took the adverse action because of the protected activity." Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003). Here, Perez argues that the mere offer of the Severance Agreement constituted retaliation. However, there is no evidence that Faurecia has taken any adverse action to prevent Perez from her protected right of filing an EEOC charge. In fact, Faurecia concedes that the Severance Agreement's provision prohibiting Perez from filing a charge with the EEOC is unenforceable.

Based on the facts of this case, "[t]he mere offer of the severance agreement is insufficient to constitute discrimination in the retaliation context." E.E.O.C. v. Nucletron Corp.,

9

563 F. Supp. 2d 592, 598 (D. Md. 2008). Faurecia did not require Perez to withdraw her EEOC charge in order to receive severance benefits. See E.E.O.C. v. Lockheed Martin Corp., 444 F. Supp. 2d 414, 417-18 (D. Md. 2006) (holding that employer conditioning receipt of severance benefits on employee withdrawing her EEOC charge constitutes retaliation); see also E.E.O.C. v. Sundance Rehabilitation Corp., 466 F.3d 490, 501 (6th Cir. 2007) (explaining that employees were not deprived of performing any protected activity by the mere offer of a severance agreement). Furthermore, there is no indication in the record that Faurecia has withheld any severance pay after Perez filed a charge with the EEOC. See Nucletron Corp., 563 F. Supp. 2d at 599 (explaining that employer's action "only reaches the level of retaliation if it denies severance benefits that are otherwise promised or owed or if the employer sues to enforce the agreement"). Based on the foregoing, the court grants Faurecia's motion to dismiss Perez's retaliation claim.

### D. Injunctive Relief, Punitive and Compensatory Damages

Lastly, the magistrate judge recommends denying Faurecia's motion to dismiss the requests for injunctive relief and compensatory damages.[6] Perez seeks injunctive relief as well as punitive and compensatory damages. Perez seeks to "permanently enjoin[] [Faurecia] from discriminating against [her] in violation of federally-protected employment laws [and] . . . permanently enjoin[] [Faurecia] from conditioning the receipt [of] any benefit on waiving or agreeing not to pursue, assist in or participate in any charge of discrimination or related action." (Compl. ¶¶ 1, 4.) Perez is no longer employed by Faurecia. Further, the terms of the Severance

---

[6] The magistrate judge did not address grounds for dismissing the punitive damages claim.

Agreement have not prevented Perez from filing a claim with the EEOC. Accordingly, the injunctive relief which Perez seeks is unnecessary. Faurecia cannot discriminate against her if she is no longer an employee and Faurecia concedes that it can take no action against Perez for filing an EEOC charge. (Def. Mem. Supp. Mot. Dismiss 11.)

Additionally, because Perez's ADEA claim is the only remaining claim, she is not entitled to punitive damages. See Fariss v. Lynchburg Foundry, 769 F.2d 958, 967 n.11 (4th Cir. 1985) ("Punitive damages are not available under the ADEA.") However, because Perez's ADEA claim has not been denied, the court denies Faurecia's motion to dismiss Perez's claim for compensatory damages. Therefore, the court grants Faurecia's motion to dismiss Perez's claims for injunctive relief and punitive damages and denies the motion to dismiss Perez's claim for compensatory damages.

For the foregoing reasons, the court adopts the Report & Recommendation of Magistrate Judge Catoe to the extent that it is consistent with this Order.

Therefore, it is

**ORDERED** that Faurecia's motion to dismiss, docket number 6, is granted in part and denied in part.

**IT IS SO ORDERED.**

                s/Henry M. Herlong, Jr.
                Senior United States District Judge

Greenville, South Carolina
July 22, 2009